**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ROBERT LACKNER,

*Plaintiff*,

v.

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY,

*Defendant*.

Case No. 24-2562-AJP

**MEMORANDUM AND ORDER**

Plaintiff Robert Lackner filed suit against Defendant Unified Government of Wyandotte County asserting claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act, 29 U.S.C. § 701 et seq., for failure to accommodate, disparate treatment, hostile work environment, retaliation/retaliatory harassment, and wrongful discharge. He also brought claims under the Family and Medical Leave Act ("FMLA") for violation of the FMLA and retaliation. Before the Court is Defendant's Motion for Summary Judgment (Doc. 46). For the reasons stated below, the Court grants Defendant's motion.

## I. Factual and Procedural Background[1]

Plaintiff began employment with Defendant on April 29, 2021, as a general laborer in the Solid Waste department. He signed a Drug Free Workplace Statement, Ethics Pledge, and Consent and Acknowledgment of Equal Employment policies on that same day. Plaintiff was promoted to a Groundskeeper 1 position on June 10, 2021. From the Groundskeeper 1 position, he moved to a Maintenance Tech 1 position in 2021. The Maintenance Tech 1 position paid over $1 more per hour than the Groundskeeper 1 position.

Ryan Teel, Operations Superintendent, was Plaintiff's direct supervisor. Joe Anthony filled in for Teel if Teel was on vacation or out sick. Teel was also Anthony's supervisor.

When Teel was absent and Anthony filled in for him, Teel instructed Anthony on the work that needed to be done. Anthony did not directly receive Plaintiff's FMLA restrictions from HR because Anthony was a fill-in supervisor, but Teel verbally explained his restrictions. Teel explained the accommodations to Anthony

---

[1] The facts set forth are those uncontroverted by the parties unless otherwise cited. Plaintiff frequently sets forth legal conclusions in his factual statement. To the extent that Plaintiff sets forth legal conclusions, the Court will not include those contentions. Furthermore, the Court will only set forth facts that are appropriately supported by the record. Many of Plaintiff's factual statements and denials to Defendant's factual statements do not have support in the record. Furthermore, Plaintiff frequently asserts his opinion as an uncontroverted fact, and the cited record either does not support the opinion or Plaintiff failed to provide an affidavit supporting his contentions. Finally, Plaintiff attempts to rely on a co-worker's affidavit to support certain factual (and legal) contentions. He cannot do so. Many of the co-worker's statements are not based on personal knowledge and oftentimes rely on hearsay. In addition, the co-worker did not work in a supervisory position nor did he have management responsibilities, and thus he cannot set forth Defendant's policies. *See* Fed. R. Civ. P. 56(c)(4) (stating that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

to ensure that Plaintiff was not given tasks that involved heights, ladders, and electrical lines. Neither Anthony nor Teel had the authority to terminate Plaintiff. Teel could give his recommendation on termination.

Beginning in July 2022, Plaintiff visited physicians from Defendant's employer sponsored clinic, for treatment of PTSD, anxiety, and depression. Plaintiff associates his PTSD, in part, with a workplace incident in July 2022, in which he observed a man stumble across the road, and Plaintiff was instructed to not help the man. Plaintiff then watched the man shoot himself inside his truck.

In July 2022, Plaintiff applied for intermittent FMLA leave. Defendant's policies on FMLA leave are publicly available on its website and are provided to all employees for acknowledgment. Plaintiff's work restrictions from Dr. Guillen in July 2022 included that Plaintiff "should be very cautious when climbing ladders, being on heights, or working with electrical wires." (Doc. 47-16 at 6). In addition, the restrictions stated that he "may need intermittent leave/absence from work depending on his response to treatment. Plaintiff may be able to perform job duties if given appropriate time and/or break." (*Id.*) Defendant granted Plaintiff provisional FMLA status in August 2022.

In November 2022, Plaintiff's physician included the same restrictions as those restrictions provided in July 2022. On November 18, 2022, Teel and Angel Ferrara, Director of Parks and Recreation, met with Plaintiff to review Plaintiff's recommended work restrictions and Defendant's attendance requirements for Plaintiff. In this meeting, Plaintiff was informed that he could call in for a one-hour

late start one to two times a week, and he could take breaks lasting 30 minutes to 1 hour one to two times per week. Plaintiff's signed FMLA paperwork includes FMLA statue excerpts stating that "[w]hen the approximate timing of the need for FMLA leave is not foreseeable, an employee must provide notice as soon as practicable. If an employee fails to give notice of the need for FMLA leave as soon as practicable, [Defendant] may delay FMLA coverage." (Doc. 47-7 at 24). In addition, according to Plaintiff's intermittent FMLA approved leave document, Plaintiff "must make a good faith effort to schedule absences and give sufficient notice of absences when reasonably possible while on intermittent leave." (Doc. 47-16 at 1). On November 18, 2022, Human Resources approved these absences and informed Plaintiff that he had been placed on intermittent FMLA status.

Plaintiff received a workplace injury and was taken to the KU clinic to get checked out on December 16, 2022. Teel observed Plaintiff with red eyes and smelling of marijuana, and he called Human Resources, requesting authorization for a urine analysis ("UA"). The clinic conducted the UA. After the test was completed, Teel picked up Plaintiff from the KU clinic and drove him home.

Plaintiff's drug test from the KU clinic came back positive for marijuana. Plaintiff contests the positive result and states that he wanted to obtain a second test, but he could not do it because it had been too long.

On December 27, 2022, Plaintiff met with Human Resources. Plaintiff signed a Return-to-Work ("RTW") agreement in lieu of termination or resignation. Plaintiff was informed that he would be on probation for two years and that he could not fail

another test or violate Defendant's other rules of conduct during this time or he would be terminated. Plaintiff, Ferrara, Human Resources, and a union representative signed the RTW agreement. The written agreement provided that "[t]he employee understands and agrees that violation of any rules and/or regulations or Rules of Conduct, that govern conduct as [Defendant's] employee, within the probationary period, may result in discipline up to and including termination." (Doc. 47-24 at 3). Defendant's Rules and Discipline can be found in the Human Resources guide which is publicly available on Defendant's website.

On March 14, 2023, Anthony observed one of Defendant's vehicles, a truck assigned to Plaintiff, parked outside of a home on the wrong side of the road in a residential neighborhood. Anthony called Ferrara, and she advised him to take a few pictures and contact Plaintiff to ask him where he was. Anthony took a picture of the vehicle, and he did not see Plaintiff near the vehicle or outside of the vehicle. When Anthony contacted Plaintiff to ask him where he was, Plaintiff stated that he was heading back to the shop. Anthony wrote Plaintiff up for violating two rules in the HR guide—Rule 3, Dishonesty and Rule 22, Leaving Assigned Work Area Without Permission. Anthony is the only individual who signed the written Disciplinary Action Report. Plaintiff states that he worked at a park, trash blew off his assigned work truck, and he stopped his truck to pick up the trash.

On March 15, 2023, Ferrara stated that another manager with Defendant approached her stating that Plaintiff had a job interview in another department that day. Ferrara followed up with Anthony, who was not aware that Plaintiff had a

job interview that day. Plaintiff did not seek approval, and he did not notify Anthony that he was going to attend an interview. An employee is required to provide notice to their supervisor when leaving their assigned job duties in their department because that would be considered leaving their job site. Defendant's policies on attendance are publicly available on Defendant's website and are provided to all employees for acknowledgment. Plaintiff states that there is no policy for internal job interviews. There is a Disciplinary Action Report for March 15, 2023, stating that Plaintiff did not seek prior approval from his supervisor or notify management that he would be leaving his work area. This document is unsigned.

On March 17, 2023, another incident occurred. Anthony wrote a Violence-Free Workplace Incident Report. In this report, it provides that Anthony asked Plaintiff to stack chairs in his truck, and Plaintiff stated that he would go get a trailer. Anthony and Plaintiff argued over the situation. Plaintiff then stated that he was taking FMLA leave and left the building. Plaintiff states that he took FMLA to diffuse the situation.

When Plaintiff left the building, he told Anthony that he felt like he harassed him and gave him "bullshit work" to do when Teel was gone. Anthony states in the report that Plaintiff was agitated, walked to his work truck for a minute, and started walking quickly back to the entrance. Anthony states that he "felt like [he] had to position [himself] to exit the facility quickly if [Plaintiff] would of (sic) had a weapon. That was the feeling that [Anthony] had since [Plaintiff] went to his vehicle

and then came back to the facility walking quickly." (Doc. 47-31). This document was signed by Anthony.

Plaintiff was suspended pending termination on March 20, 2023, due to violations of his RTW agreement occurring between March 14 and March 17.

On March 23, 2023, Plaintiff was terminated. Ferrara, Teel, Anthony, and HR met with Plaintiff to give him his termination letter and collect his keys. Plaintiff's termination letter stated that he was being terminated due to violations of his RTW agreement and the following violations: (1) December 16, 2022 reasonable suspicion UA test, (2) December 22, 2022 report of Plaintiff's failure of the UA test and resulting RTW agreement, (3) March 14, 2023 violation for being dishonest about leaving job site without permission, (4) March 15, 2023 violation for failing to seek permission to attend a job interview, and (5) March 17, 2023 violation for foul language toward supervisor, as well as abuse of FMLA because he did not agree with the work assignment and a concern by supervisor of violence. (Doc. 47-34 at 1).

Plaintiff did not file a grievance in relation to his termination although his termination letter provided that he had the right to a grievance process and could work with the union if he disagreed with the decision. Plaintiff did not make any complaint to HR relating to discrimination, harassment or FMLA violations. No supervisor was ever made aware of Plaintiff's underlying medical diagnosis relating to his FMLA leave.

Plaintiff states that he informed Teel that Anthony made him perform work in violation of his restrictions which included going up in a bucket truck to work on streetlamps, rewiring a pole barn in a bucket truck, and working with wiring in a gym. Anthony states that he does not recall requiring Plaintiff to do any of those tasks. Plaintiff does not specifically recall derogatory comments from coworkers about Plaintiff taking FMLA, but he states that Anthony questioned him once as to why he was on FMLA leave and whether it was a valid reason.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 5, 2023. In November 2023, Plaintiff filed for bankruptcy under Chapter 13. Plaintiff received a Right to Sue letter from the EEOC addressed August 28, 2024.

On December 6, 2024, Plaintiff filed his Complaint. He asserts seven claims: (1) failure to accommodate his disability under the ADA and Rehabilitation Act; (2) disparate treatment under the ADA and Rehabilitation Act; (3) hostile work environment under the ADA and Rehabilitation Act; (3) retaliation/retaliatory harassment under the ADA and Rehabilitation Act;[2] (4) wrongful discharge under the ADA and Rehabilitation Act; (5) violation of the FMLA; and (6) retaliation under the FMLA. Defendant now seeks summary judgment on all claims.

---

[2] Plaintiff's Complaint contained a numbering error, and there are two claims labeled Count 3. The Pretrial Order followed the Complaint's numbering, and thus the Court will follow the Pretrial Order's numbering.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A party is thus entitled to summary judgment if the evidence points only one way and no reasonable inferences could support the non-moving party's position." *Genberg v. Porter*, 882 F.3d 1249, 1253 (10th Cir. 2018) (citing *Auraria Student Hous. at the Regency v. Campus Vill. Apartments*, 843 F.3d 1225, 1247 (10th Cir. 2016)). The court views the evidence and all reasonable inferences drawn therefrom "in the light most favorable to the nonmoving party." *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

Initially, the movant bears the burden to show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth "specific facts showing a genuine issue for trial." *James v. Wadas*, 724 F.3d 1312, 1319 (10th Cir. 2013). These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory opinions, allegations unsupported by specific facts, or speculation alone cannot survive a motion for summary judgment. *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citation omitted).

## III. Analysis

Defendant seeks summary judgment on all of Plaintiff's claims. It claims that (1) judicial estoppel bars Plaintiff's claims; (2) Plaintiff filed his Complaint past the 90-day window provided by the EEOC in his Right to Sue letter, and thus his ADA and Rehabilitation claims are time-barred; (3) Plaintiff fails to present any evidence of discrimination due to his disability, (4) and Plaintiff fails to demonstrate that his FMLA leave or workplace restrictions were violated or were the reason for his termination. The Court will first address Defendant's timeliness argument as it is dispositive to Plaintiff's ADA/Rehabilitation claims. The Court will then turn to Plaintiff's FMLA claims.[3]

### A. Plaintiff's ADA/Rehabilitation Claims are Untimely

Defendant asserts that Plaintiff's ADA and Rehabilitation claims are barred due to Plaintiff's failure to timely file his Complaint after receiving his Right to Sue letter. Plaintiff contends that his claims are timely.

Under 42 U.S.C. § 2000e-5(f)(1), a plaintiff must file suit within 90 days of his receipt of an EEOC right-to-sue letter. *Witt v. Roadway Exp.*, 136 F.3d 1424, 1429 (10th Cir. 1998). The ADA incorporates the 90-day limitations period from Title VII, and "a plaintiff must file suit within 90 days of receiving notice of their right to sue (NRTS)." *Pinnock v. Teletech Gov't Sols., LLC*, No. 25-1285, 2026 WL 1970544, at *1 (10th Cir. 2026) (citing 42 U.S.C. § 12117(a)). Similarly, the Rehabilitation Act adopts Title VII's 90-day requirement. *Ritchhart v. DeJoy*, No. 23-4078, 2024 WL

[3] The Court finds it unnecessary to address Defendant's judicial estoppel argument.

1298464, at *3 (10th Cir. 2024) (citations omitted); *see also* 29 U.S.C. § 794(a)(1). "The ninety-day limit begins to run on the date the complainant actually receives the EEOC right-to-sue notice, making that date a material fact." *Witt*, 136 F.3d at 1429 (citations omitted). "This filing requirement 'is not a jurisdictional prerequisite' but 'a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel and equitable tolling.'" *Panicker v. Compass Grp. U.S.A., Inc.*, 712 F. App'x 784, 785 (10th Cir. 2017) (quoting *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995)).

Defendant asserts that Plaintiff received a Right to Sue letter from the EEOC addressed August 28, 2024, making Plaintiff's deadline to file his Complaint November 26, 2024. Thus, Defendant argues that Plaintiff's Complaint—filed on December 6, 2024—was untimely because it was filed 10 days late. Plaintiff states that the EEOC issued the letter on August 28, 2024, and he received the notice on September 7, 2024, and thus his Complaint was timely filed on December 6, 2024.

It is uncontroverted that the EEOC issued its right to sue letter on August 28, 2024. Plaintiff's receipt of the letter, however, is the relevant question. *Jackson v. Cont'l Cargo-Denver*, 183 F.3d 1186, 1187 (10th Cir. 1999) (citation omitted). Plaintiff contends that the letter was issued just before Labor Day, and he did not receive it until September 7, 2024. Yet, Plaintiff does not support the fact that he did not receive the letter until September 7, 2024, by affidavit or any other evidence. Instead, he simply cites the EEOC letter, which is dated August 28, 2024,

and thus the EEOC notice does not demonstrate that Plaintiff received the letter ten days later on September 7.

Plaintiff also attempts to rely on an allegation from his Complaint for support that he received the EEOC letter on September 7, 2024. At summary judgment, however, the nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Furthermore, even the allegation in Plaintiff's Complaint is contradictory because it states that the EEOC's right to sue letter was issued on *September 29*, 2024,[4] and he received it on September 7, 2024. Finally, Plaintiff states that he received the right to sue letter after the Labor Day holiday on September 4, 2024. Labor Day, however, did not fall on that date because September 4 is a Wednesday, and Labor Day fell on Monday, September 2, 2024. Accordingly, Plaintiff's factual contention that he received the letter on September 7, 2024, is unsupported.

"When the EEOC mails right-to-sue notices to Title VII claimants, 'courts routinely apply a presumption of receipt.'" *Fulbright v. Water Sys. Eng'g Inc.*, No. 21-2191-DDC-TJJ, 2021 WL 5161756, at *5 (D. Kan. Nov. 5, 2021) (citing *Lozano v. Ashcroft*, 258 F.3d 1160, 1164 (10th Cir. 2001)). When the receipt date for an EEOC right-to-sue letter is unknown or disputed, the Tenth Circuit has "implicitly sanctioned applying either a five-day or a three-day presumption." *Lozano*, 258 F.3d at 1165 (citing *Witt*, 136 F.3d at 1429–30).

[4] The EEOC letter is attached to Defendant's Motion for Summary Judgment, and it was issued August 28, 2024.

In this case, if the Court were to employ a three-day presumption, Plaintiff would have received the letter on August 31, 2024, and the 90-day timeframe to file suit would run on November 29, 2024. If the Court employed a five-day presumption, Plaintiff is presumed to have received the letter on September 4, 2024,[5] and the 90-day timeframe ran on December 3, 2024. Even if the Court were to employ a seven-day mailing presumption, Plaintiff would be presumed to have received the right-to-sue letter on September 6, 2024, and the 90-day filing deadline would run on December 5, 2024. Under any presumption, Plaintiff's Complaint was untimely filed when it was filed on December 6, 2024.

Plaintiff fails to provide the Court with evidence to support September 7, 2024, as the date he received the EEOC notice. In addition, applying a mailing presumption of three, five, or seven days, Plaintiff's Complaint was untimely filed, and Plaintiff fails to provide any evidence rebutting the mailing presumption. Finally, Plaintiff does not make any equitable tolling or estoppel arguments that would alter Plaintiff's filing deadline. *See Merrill v. Cintas Corp.*, 941 F. Supp. 1040, 1045 (D. Kan. 1996) (granting the defendant summary judgment on the basis that the plaintiff's filing was untimely because it was at least one day after the 90-day filing period and the plaintiff's explanation that "[a] filing mistake by her attorney's runner [did] not rise to the level necessary to justify" an equitable remedy because it would "open the door to every Title VII plaintiff [seeking] to overcome his or her

---

[5] The Court does not count Sunday, August 1 or Monday, August 2 as mailing days as those are days in which mail was not delivered.

attorney's allegedly inadvertent procedural mistakes."). Accordingly, Plaintiff's ADA/Rehabilitation claims are untimely, and the Court grants Defendant summary judgment on these claims.

### B. FMLA Claims

Defendant argues that both of Plaintiff's FMLA claims fail. At the outset, the Court notes that there is little difference in Plaintiff's purported FMLA claims. The Court has reviewed the Pretrial Order in this case. Plaintiff's FMLA claims, entitled "Violation of FMLA" (Count 5) and "FMLA Retaliation" (Count 6), set forth the exact same factual allegations. The same standard is applicable to Plaintiff's FMLA discrimination and retaliation claims, and thus the Court will consider them together.[6]

"The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination . . . for a serious health condition." *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 539 (10th Cir. 2014) (alterations, quotation marks, and citation omitted). A "retaliation or discrimination theory [under the FMLA] arises from [29 U.S.C.] § 2615(a)(2), which provides that 'it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this

[6] The Court notes that there is another theory of recovery under the FMLA, separate from the discrimination or retaliation theory, which is the entitlement or interference theory. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2022). Plaintiff does not state that he brings an entitlement/interference claim nor does he make any argument or provide legal authority to support such a theory/claim. Thus, the Court will not address this theory.

subchapter.'" *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2022) (quoting § 2615(a)(2)).

"When analyzing FMLA discrimination/retaliation claims under 29 U.S.C. § 2615(a)(2), courts apply the *McDonnell Douglas* burden shifting approach." *Satterlee v. Allen Press, Inc.*, 455 F. Supp. 2d 1236, 1252–53 (D. Kan. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); then citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). The plaintiff first bears the burden of establishing a prima facie case. *Id.* at 1253. If the plaintiff does so, the burden then shifts to the defendant to produce evidence of a nondiscriminatory or nonretaliatory reason for its decision. *Id.* If the defendant meets its burden, the plaintiff must then demonstrate that there is a question of fact as to whether the defendant's proffered reason is pretextual. *Id.*

A prima facie case of discrimination/retaliation under the FMLA requires the plaintiff to demonstrate that (1) he availed himself to a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) a causal connection between the two. *Morgan*, 108 F.3d at 1325.

Here, Defendant does not dispute the first element. Plaintiff applied for intermittent FMLA leave in July 2022, and Defendant granted Plaintiff provisional FMLA status in August 2022. In November 2022, Defendant again granted Plaintiff intermittent FMLA leave status.

Plaintiff alleges that he was discriminated against because he was denied restrictions under the FMLA and he was required to work outside of his

restrictions. In addition, Plaintiff asserts that Defendant used FMLA leave as a negative factor in the decision to terminate him and that he was subject to harassment due to his FMLA leave usage. Defendant argues that it provided Plaintiff with his FMLA accommodations/leave and that Plaintiff fails to establish that his FMLA requests were denied or ignored. In addition, Defendant contends that Plaintiff's termination was not based on FMLA leave but rather because Plaintiff violated his RTW agreement.

The Court will first address Plaintiff's contention that he was denied restrictions under the FMLA. Plaintiff does not provide any evidence that he was ever prevented or denied FMLA leave. Instead, the evidence demonstrates that he was granted intermittent FMLA leave. He claims that Anthony told him that he needed to give 30 minutes notice before taking an FMLA break, but he does not demonstrate that he asked for and was denied any leave on this basis. Nor does he provide any evidence that he was ever prohibited from taking leave. Indeed, Plaintiff only recalls one instance, on March 17, 2023, in which he communicated to Anthony that he was taking FMLA leave.[7] In short, Plaintiff cannot demonstrate a question of fact as to whether he was denied leave and thus cannot demonstrate an adverse action.

Plaintiff also claims that he was required to work outside of his restrictions. With regard to this contention, it appears as though Plaintiff contends that he was required to work outside the *physical* restrictions his doctor had recommended, *i.e*,

---

[7] This incident will be discussed further in connection with Plaintiff's termination.

that Plaintiff "should be very cautious when climbing ladders, being on heights, or working with electrical wires." (Doc. 47-16 at 6). He claims that Defendant required him to go up in a bucket truck to fix streetlamps, rewire a pole barn, and rewire and work on the roof in a gym. Defendant disputes this contention. However, even if there is a question of fact on this issue, and Plaintiff could demonstrate that he was adversely affected, Plaintiff does not demonstrate a causal connection as Plaintiff does not address the timing of these incidents related to his protected activity. Accordingly, Plaintiff cannot demonstrate a prima facie case of FMLA discrimination/retaliation based on these incidents.

Next, Plaintiff contends that Defendant used FMLA leave as a negative factor in the decision to terminate him. Plaintiff's termination is clearly an employment action that adversely affected him. As to causation, however, unless an employer's adverse employment action "is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citation omitted). A three-month period between the protected activity and the adverse employment action is insufficient to demonstrate a causal connection. *Metzler v. Fed'l Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006).

Defendant argues that Plaintiff cannot establish a causal connection because he applied for intermittent FMLA in July 2022, which was granted, and he worked under that intermittent leave until March 2023, when he was terminated. Plaintiff

asserts that Defendant began trying to terminate Plaintiff shortly after his FMLA/disability accommodations were finalized in November 2022, and within four months of the time Plaintiff received his FMLA certification, he was terminated.[8] Whether the Court considers the FMLA request in July 2022 or the finalization of intermittent FMLA leave in November 2022, these incidents are eight and four months removed from Plaintiff's termination in March 2023. Thus, they are too far removed to establish a prima facie case for FMLA retaliation.

Plaintiff, however, also states that his termination was based upon him taking a break/leave. The record indicates that Plaintiff told Anthony that he was taking FMLA leave on March 17, 2023, after an incident between the two of them. Defendant terminated Plaintiff on March 23, 2024. Very close temporal proximity can satisfy a prima facie case of retaliation under the FMLA. *Metzler*, 464 F.3d at 1172. Because of the close temporal proximity between Plaintiff's statement that he was taking FMLA leave and his termination, the Court concludes that Plaintiff establishes a prima facie case.

The burden now shifts to Defendant to set forth a legitimate, nondiscriminatory or nonretaliatory reason for Plaintiff's termination. Defendant does so. It demonstrates that Plaintiff was placed on a RTW agreement in December 2022 after failing a drug text. The RTW agreement stated that he was on probation for two years and that he could not fail another test or violate Defendant's

---

[8] Plaintiff primarily asserts his causation argument in the context of his ADA retaliation claim rather than his FMLA retaliation claim. The Court notes that both parties frequently conflate the ADA and FMLA claims.

other rules of conduct during this time or he would be terminated. In March 2023, he violated several policies on different days, and he was then terminated. Accordingly, Defendant presents a legitimate, nonretaliatory reason.

Because Defendant meets its burden, the burden shifts back to Plaintiff to demonstrate that Defendant's reason is pretextual for FMLA retaliation. To raise a factual issue of pretext, a plaintiff must show that "a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Litzsinger v. Adams Cnty. Coroner's Office*, 25 F.4th 1280, 1287 (10th Cir. 2022) (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007)). Temporal proximity alone is insufficient to demonstrate pretext, and Plaintiff must "present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive." *Metzler*, 464 F.3d at 1172 (citation omitted). "Pretext may be established by revealing weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Litzsinger*, 25 F.4th at 1287 (quotation marks and citations omitted).

Plaintiff argues he was not terminated for violating his RTW agreement and asserts he has controverted the allegation that he violated any term of the RTW agreement. Instead, Plaintiff claims that Anthony fabricated false allegations of

Plaintiff's policy violations. Plaintiff, however, engages in conjecture and asserts conclusory arguments.

As an initial matter, Plaintiff contends that Anthony is the individual who fabricated false allegations to terminate him. It is uncontroverted, however, that Anthony did not have the authority to terminate Plaintiff. Furthermore, although Plaintiff claims that Anthony's allegations are false, he provides no evidence establishing a question of fact as to this issue. Plaintiff cannot satisfy the summary judgment standard of setting forth specific facts showing a genuine issue of material fact by relying on his conclusory opinion that Anthony's statements are false. *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (noting that "conclusory allegations without specific supporting facts have no probative value") (internal quotation marks and citation omitted).

As to the three violations listed in Plaintiff's termination letter, he contends that they are false. On March 14, Anthony stated that Plaintiff violated two rules of the HR guide—dishonesty and leaving assigned work area without permission. Defendant presents testimony that Anthony observed Plaintiff's work vehicle parked on the wrong side of the road in a residential neighborhood. Ferrara advised Anthony to take a picture and contact Plaintiff to inquire about his whereabouts. Anthony took a picture, and Plaintiff was not near the vehicle.[9] When Anthony contacted Plaintiff to ask him where he was, Plaintiff stated that he was heading back to the shop. Anthony then wrote the violation report.

---

[9] The picture is admitted into evidence.

Plaintiff states Defendant's reason is false because he stopped to pick up trash which is not against any of Defendant's policies. Plaintiff, however, does not present any evidence that Defendant's reason is false. When considering the pretext question, the Court does not "ask whether the employer's reasons were wise, fair or correct; [instead] the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118–19 (10th Cir. 2007) (citing *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007)). "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." *Id.* at 1119 (quoting *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007)). Because Plaintiff simply relies on his conclusory opinion that Anthony's statement is false, he fails to demonstrate a question of fact.

As to Plaintiff's contention that he did not commit a violation on March 15 for failing to seek permission to attend a job interview, he also does not present evidence to create a genuine issue of fact. He states that Defendant does not have a policy that employees are required to inform their supervisor if they are considering another position with Defendant. Although that may be true, Defendant provides evidence that an employee must inform their supervisor if they are leaving their assigned job site to attend an interview. Plaintiff failed to do so. Ferrara was approached by a different manager with Defendant stating that Plaintiff had an interview that day. When Ferrara inquired with Anthony as to whether Plaintiff informed him that he was attending the interview, Anthony stated that Plaintiff

had not told him. Thus, Plaintiff does not demonstrate that there is a question of fact as to the validity of this violation stated in Plaintiff's termination letter.

As to the March 17 incident listed in Plaintiff's termination letter, Plaintiff claims that returning to work from a truck is not evidence of violence in the workplace and using the word "bullshit" has never been a punishable offense. Again, Plaintiff simply relies on his own conclusory statement to support his contention. He fails to demonstrate a question of fact as to whether Defendant's stated reason is unworthy of belief due to inconsistencies or incoherencies.

In sum, Plaintiff does not offer evidence of inconsistencies, weaknesses, or contradictions in Defendant's stated reason for termination that demonstrates a genuine issue of fact as to whether Defendant's reason is fabricated to conceal unlawful FMLA discrimination or retaliation.

Finally, Plaintiff asserts that he was subject to harassment due to his FMLA leave usage. The evidence does not support Plaintiff's contention. Plaintiff states that coworkers said different things about Plaintiff being off from work and that they wished they could do that. Yet, Plaintiff cannot name any co-worker who made derogatory comments about Plaintiff's leave or disability, let alone that there were continual or frequent incidents. As to Plaintiff's allegations about Anthony, Plaintiff testified that he recalled one comment in which Anthony questioned Plaintiff as to why he was on FMLA and if it was a valid reason. One isolated incident is insufficient to establish harassment. Accordingly, there is no genuine issue of

material fact as to whether Plaintiff experienced harassment due to his FMLA leave.

In sum, Defendant is entitled to summary judgment on Plaintiff's FMLA claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 46) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Quash Defendant's Document Subpoenas (Doc. 55) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

This case is closed.

Dated this 3rd day of November, 2026.

ANTHONY J. POWELL
UNITED STATES DISTRICT JUDGE